Betty Chen (CA SBN 290588)
bchen@fr.com
FISH & RICHARDSON P.C.
500 Arguello St. Suite 400
Redwood City, CA 94063
Telephone: (650) 839-5070
Facsimile: (650) 839-5071

Thad Kodish (*Pro Hac Vice to be filed*)
tkodish@fr.com
FISH & RICHARDSON P.C.
1180 Peachtree Street NE, 21st Floor
Atlanta, GA 30309
Telephone: (404) 892-5005

Ricardo J. Bonilla (*Pro Hac Vice to be filed*)
rbonilla@fr.com
Sarika N. Patel (*Pro Hac Vice to be filed*)
patel@fr.com
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, TX 75201
Telephone: (214) 747-5070
Facsimile: (214) 747-2091

Counsel for Defendant
HEALTH MART SYSTEMS, INC.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **GEOGRAPHIC LOCATION INNOVATIONS, LLC,** | **Case No. 4:21-cv-05155-YGR** |
| | **PATENT CASE** |
| **Plaintiff,** | **JURY TRIAL DEMANDED** |
| v. | **HEALTH MART SYSTEMS, INC.'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM WITH MEMORANDUM OF LAW IN SUPPORT** |
| **HEALTH MART SYSTEMS, INC.** | |
| **Defendant.** | |
| | DATE: October 14, 2021 |
| | TIME: 10:00 a.m. |
| | DEPT: Courtroom 1, 4th Floor |
| | JUDGE: Hon. Yvonne Gonzalez Rogers |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **NOTICE OF MOTION**

TO ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on October 14, 2021 at 10:00 a.m., or as soon thereafter as the matter may be heard, in the United States District Court, Northern District of California, located at the United States Courthouse, 1301 Clay Street, 4th Floor, Courtroom 1, Oakland, California 94612, before the Honorable Yvonne Gonzalez Rogers, Defendant Health Mart Systems, Inc. ("Health Mart" or "Defendant") will move, and hereby presents for hearing by the Court this motion to dismiss Plaintiff Geographic Location Innovations LLC's ("GLI") Complaint with prejudice for the reasons set forth below.

This motion is based on this notice of motion and motion, the accompanying memorandum of points and authorities, and such additional papers and arguments as map be presented at or in connection with the hearing.

Dated: August 27, 2021                    Respectfully submitted,

                                          By: */s/ Betty Chen*
                                          Betty Chen

2

# TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................................1

II.     FACTUAL BACKGROUND..................................................................................2

III.    ARGUMENT ........................................................................................................4

        A.      This Case Should Be Disposed Of At The Pleading Stage
                Through Rule 12(b)(6)...............................................................................4

        B.      The Law Of 35 U.S.C. § 101. ...................................................................5

        C.      The Patent-in-Suit Is Invalid Under 35 U.S.C. § 101. ..............................6

                1.      The Independent Claims Of The '285 Patent Are
                        Patent-Ineligible...........................................................................6

                2.      The dependent claims of the '285 Patent are not patent
                        eligible........................................................................................16

                3.      There are no claim construction or factual disputes
                        preventing the Court from ruling on this issue at the
                        Rule 12 stage...............................................................................17

IV.     CONCLUSION...................................................................................................19

i

1

**<u>TABLE OF AUTHORITIES</u>**

2

**Page(s)**

3

**Cases**

4

*Affinity Labs of Texas, LLC v. DirecTV, et al.,*

5
    838 F.3d 1253 (Fed. Cir. 2016)..................................................................15

6

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l,*
    134 S. Ct. 2347 (2014) .................................................................... *passim*

7

8

*Ancora Technologies, Inc. v. HTC America, Inc.,*
    908 F.3d 1343 (Fed. Cir. 2018)..............................................................11, 12

9

*Appistry, Inc. v. Amazon.com, Inc.,*

10
    195 F. Supp. 3d 1176 (W.D. Wash., 2016)......................................................18

11

*Appistry, LLC v. Amazon.com, Inc.,*
    676 F. App'x 1008 (Fed. Cir. 2017) ............................................................18

12

*Ashcroft v. Iqbal,*

13
    556 U.S. 662 (2009) .............................................................................4

14

*Bancorp Servs. L.L.C. v. Sun Life Assur. Co.,*

15
    687 F.3d 1266 (Fed. Cir. 2012)..............................................................5, 14

16

*Bell Atlantic v. Twombly,*
    550 U.S. 544 (2007)............................................................................4, 5

17

*Berkheimer v. HP Inc.,*

18
    881 F.3d 1360 (Fed. Cir. 2018)..............................................................15, 17

19

*Bilski v. Kappos,*

20
    561 U.S. 593 (2010)...........................................................................5, 6, 7

21

*BSG Tech LLC v. Buyseasons, Inc.,*
    899 F.3d 1281 (Fed. Cir. 2018).........................................................1, 7, 15, 17

22

*buySAFE, Inc. v. Google, Inc.,*

23
    765 F.3d 1350 (Fed. Cir. 2014)..............................................................12, 14

24

*Callwave Communs., LLC v. AT&T Mobility, LLC,*

25
    207 F. Supp. 3d 405 (D. Del. 2016).............................................................9

26

27

28

ii

*Capital One. Intellectual Ventures I LLC v. Capital One Financial Corporation*,
   850 F.3d 1332 (Fed. Cir. 2017).................................................................................11, 13

*Cisco Systems, Inc. v. Uniloc 2017 LLC*,
   813 Fed. Appx. 495 (Fed. Cir. 2020) ..................................................................................17

*Clear with Computers, LLC v. Dick's Sporting Goods, Inc.*,
   21 F. Supp. 3d 758 (E.D. Tex. 2014) ..................................................................................16

*Concaten, Inc. v. Ameritrak Fleet Solutions, LLC*,
   131 F.Supp.3d 1166 (D. Colo. 2015)................................................................................8, 9

*Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
   776 F.3d 1343 (Fed. Cir. 2014)..........................................................................................7, 14

*Core Wireless Licensing S.A.R.L. v. LG Elec., Inc.*,
   880 F.3d 1356 (Fed. Cir. 2018)................................................................................................10

*CyberSource Corp. v. Retail Decisions, Inc.*,
   654 F.3d 1366 (Fed. Cir. 2011)..................................................................................................6

*Data Engine Techs. LLC v. Google LLC*,
   906 F.3d 999 (Fed. Cir. 2018)...................................................................................................10

*DDR Holdings, LLC v. Hotels.com, L.P.*,
   773 F.3d 1245 (Fed. Cir. 2014)..................................................................................................15

*Diamond v. Chakrabarty*,
   447 U.S. 303 (1980)......................................................................................................................5

*Diamond v. Diehr*,
   450 U.S. 175 (1981)......................................................................................................................6

*Dropbox, Inc. v. Synchronoss Technologies, Inc.*,
   371 F.Supp.3d 668 (N.D. Cal. 2019) ........................................................................................7

*Dropbox, Inc. v. Synchronoss Techs., Inc.*,
   815 F. App'x 529 (Fed. Cir. 2020) ..........................................................................................18

*Elec. Power Grp., LLC v. Alstom S.A.*,
   830 F.3d 1350 (Fed. Cir. 2016)................................................................................10, 12, 15

*Enfish, LLC v. Microsoft Corp.*,
   822 F.3d 1327 (Fed. Cir. 2016)..............................................................................................15

iii

*Epic IP LLC v. Backblaze, Inc.*,
   351 F. Supp. 3d 733 (D. Del. 2018)................................................................8

*Finjan, Inc. v. Blue Coat System, Inc.*,
   879 F.3d 1299 (Fed. Cir. 2018)................................................................7

*First-Class Monitoring, LLC v. Ups of Am., Inc.*,
   389 F. Supp. 3d 456 (E.D. Tex. 2019)................................................................17

*Fort Props., Inc. v. Am. Master Lease LLC*,
   671 F.3d 1317 (Fed. Cir. 2012)................................................................6

*Intellectual Ventures I LLC v. Symantec Corp.*,
   838 F.3d 1307 (Fed. Cir. 2016)................................................................13

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
   132 S. Ct. 1289 (2012)................................................................6

*McRO, Inc. v. Bandai Namco Games Am., Inc.*,
   837 F.3d 1299 (Fed. Cir. 2016)................................................................10

*Parker v. Flook*,
   437 U.S. 584 (1978)................................................................6, 12

*Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc.*,
   2:16-cv-152-JRG-RSP, 2017 WL 1065938 (E.D. Tex. Mar. 8, 2017)................................................................7

*RecogniCorp, LLC v. Nintendo Co., Ltd.*,
   855 F.3d 1322 (Fed. Cir. 2017)................................................................10

*SAP Am., Inc. v. InvestPic, LLC*,
   898 F.3d 1161 (Fed. Cir. 2018)................................................................7, 9

*Simio, LLC v. FlexSim Software Products, Inc.*,
   983 F.3d 1353 (Fed. Cir. 2020)................................................................18

*Synopsys, Inc. v. Mentor Graphics Corp.*,
   839 F.3d 1138 (Fed. Cir. 2016)................................................................17

*In re TLI Commc'ns LLC Patent Litigation*,
   823 F.3d 607 (Fed. Cir. 2016)................................................................13

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
   874 F.3d 1329 (Fed. Cir. 2017)................................................................10, 13

*Ultramercial, Inc. v. Hulu,*
    LLC, 772 F.3d 709 (Fed. Cir. 2014) (Mayer, J., concurring) ................................5

*Voip-Pal.Com, Inc. v. Apple Inc.*,
    411 F.Supp.3d 926 (N.D. Cal. 2019) ..............................................13

*Wireless Media Innovations, LLC v. Maher Terminals, LLC,*
    100 F.Supp.3d 405 (D.N.J. 2015) ..............................................8, 9

*Wolf v. Capstone Photography, Inc.*,
    2:13-cv-09573, 2014 WL 7639820 (C.D. Cal. 2014) ..............................16

**Statutes**

35 U.S.C. § 101 ................................................................ *passim*

**Other Authorities**

Fed. R. Civ. P. 12 ..............................................................17

Fed. R. Civ. P. 12(b)(6) ..............................................2, 4, 6, 18

## I.     INTRODUCTION

Obtaining the route to a destination is an abstract concept ineligible for patent protection. The claims of U.S. Patent No. 7,917,285, which Plaintiff Geographic Location Innovations LLC ("GLI") asserts in this action against Defendant Health Mart Systems, Inc. ("Health Mart"), are directed to this abstract concept and do not claim any inventive concept sufficient to confer patent eligibility on the claimed abstract idea. Abstract ideas like this, when implemented using conventional computer components, are not eligible for patent protection under 35 U.S.C. § 101. *See Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2357 (2014). This is especially true if the abstract idea is not directed to any improvement in technology and any purported "inventive concept" is limited to improving the abstract idea itself. *See BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018). For many years, people have obtained route information from someone that knows the route to a desired destination. Even the GPS devices at the time of the '285 Patent's filing allowed users to input and store their desired destination information in their GPS devices, and to later obtain a route to a previously stored destination. '285 Pat., 1:15–42. But according to the patent, this process was time consuming, inefficient, and difficult (*see id.*, 1:45–2:6), and thus the goal of the alleged invention was "to allow a user to be able to easily, quickly and safely program their GPS device(s) with address/destination information." *Id.*, 2:28–30. But using existing technologies to allow users to obtain the route to a destination is not a technological improvement, an inventive way of applying conventional technology, or even new as of April 28, 2006. Moreover, none of the claims recite any specific hardware or software; instead, the specification discloses only that the alleged invention uses generic computer components and software to perform conventional activities.

Abstract ideas are not eligible for patenting. And none of the claims contains an "'inventive concept' . . . sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *See Alice*, 134 S. Ct. at 2355. The Asserted Patent does no more than withdraw a basic idea (obtaining the route to a destination) from the public domain without disclosing any particularized application of that idea. Therefore, the Asserted Patent is

invalid under 35 U.S.C. § 101 for failure to claim patent-eligible subject matter. Resolving these issues does not require more discovery or claim construction. GLI's factual allegations, when presumed true, do not avoid dismissal. Therefore, to avoid a waste of judicial and party resources further litigating an invalid patent, Health Mart requests the Court dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

## II.      FACTUAL BACKGROUND

The '285 Patent relates to obtaining the route to a destination using a GPS device. *See* '285 Pat., 2:34–39. The applicant explained and admitted that GPS devices existed in the prior art, and users were able to input and store their desired destination information in their GPS devices, and to later obtain a route to a previously stored destination. *Id.*, 1:15–42. The applicant then identified some problems when using prior art GPS devices to input, store, and obtain route information: (1) "different devices recognize addresses differently" (*Id.*, 1:45–47); (2) "many users have multiple vehicles that go to the same address and require route guidance by the GPS device" (*Id.*, 1:64–66); and (3) "many times a user needs to route to an address or destination while the user is driving" (*Id.*, 2:4–6). Thus, as the applicant explained, the goal of the alleged invention was "to allow a user to be able to easily, quickly and safely program their GPS device(s) with address/destination information." *Id.*, 2:28–30.    Figure 1 in the patent depicts an embodiment of the alleged invention as a generic mobile phone that existed in prior art. *See id.*, Fig. 1; *see also id.*, 4:1–36. The specification further lists "various modules included in the device illustrated in FIG. 1." *See id.*, 3:39–40; *see also id.*, Fig. 2. But the purported solution the applicant provided for allowing users to easily, quickly and safely program their GPS device(s) with address/destination information, consists of nothing more than the use of conventional components and processes. The applicant makes this clear through his own language in the specification. For example, the specification makes the following concessions about the use of conventional components and processes:

- "The computer processing module will use computer software instructions that have been programmed into the module and **conventional computer processing power** to interact and organize the traffic flow between the various other modules. It is to be understood that **the present disclosure may be implemented in various forms of hardware, software, firmware, special purpose processors, or a combination thereof**." *Id.*, 4:39–46;

- "The locational information module 122 may include a receiver and antenna ANT employing **conventional locational information processing technology** such as Global Positioning Satellite (GPS) Technology, Loran Technology, or any other available locational technology . . . ." *Id.*, 5:5–13;

- "The date and time module 124 will use **standard computer chip processing technology** widely in use . . . ." *Id.*, 5:26–29;

- "**display [module] may be in any current form in the art**, including Liquid Crystal Displays (LCD), Light emitting diode displays (LED), Cathode Ray Tube Displays (CRT) or any other type of display currently existing or existing in the future." *Id.*, 5:36–40;

- "**Such input devices are standard and currently available on many electronic devices** including portable digital assistants (PDAs) and cellular telephones." *Id.*, 5:48–58;

- "The storage module 110 includes . . . the various types of CD and DVD media; solid-state storage memory, e.g., a CompactFlash card, a Memory Stick, SmartMedia card, MultiMediaCard (MMC), SD (Secure Digital) memory; or **any other memory storage that exists currently or will exist in the future**." *Id.*, 6:1–8;

- "The communication module 112 will perform its functionality by hardwired and/or wireless connectivity. The hardwire connection may include but is not limited to hard wire cabling, e.g., parallel or serial cables, USB cable, Firewire (1394 connectivity) cables, and the appropriate port. **The wireless connection will operate under any of the various known wireless protocols** including but not limited to Bluetooth™ interconnectivity, infrared connectivity, radio transmission connectivity including computer digital signal broadcasting and reception commonly referred to as Wi-Fi or 802.11.X (where x denotes the type of transmission), **or any**

**other type of communication protocols or systems currently existing or to be developed for wirelessly transmitting data**." *Id.*, 6:46–60;

- "The encryption module 128 will use **conventional code encryption algorithms** currently in use or that will be in use in the future such as symmetric-key algorithms, e.g., DES, Triple-DES, Blowfish, RC2, RC4, RC5, etc, and asymmetric-key algorithms, e.g., Diffie-Hellman, RSA, ElGamal, etc. to encrypt the data information that comes into the user input module 126 and/or that is stored in the storage module 110." *Id.*, 7:8–14;

- "The identity capture device may be a biometric device, such as a retinal scanning device, finger print reader, facial recognition reader or another type of user identity verification input device which will collect information on the user to be compared to information that has previously been stored in the device's memory. One such exemplary fingerprint reader is the BioTouch™ fingerprint reader commercially available from Identix Incorporated of Minnetonka, Minn. **It is to be noted that identity detection devices such as biometric devices are common and are currently widely in use**." *Id.*, 7:52–67; and

- "**The server 304 may be connected to the communications network 302, e.g., the Internet, by any known means**, for example, a hardwired or wireless connection 308, such as dial-up, hardwired, cable, DSL, satellite, cellular, PCS, wireless transmission . . . ." *Id.*, 8:30–34.

Accordingly, the invention consists of generic components used for their conventional functionalities.

## III. ARGUMENT

### A. This Case Should Be Disposed Of At The Pleading Stage Through Rule 12(b)(6).

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint that fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, a complaint must provide the plaintiff's grounds for entitlement to relief. *See Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). Although factual allegations are taken as true, legal conclusions are given no deference—those matters are left for the court to decide. *See Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (noting tenet that allegations are taken as true on a motion to dismiss "is inapplicable to legal conclusions"). Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true. *Twombly*, 550 U.S. at 555.

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Accordingly, the § 101 inquiry is properly raised at the pleadings stage if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter. *See Ultramercial, Inc. v. Hulu*, LLC, 772 F.3d 709, 718–19 (Fed. Cir. 2014) (Mayer, J., concurring). In those situations, claim construction is not required to conduct a § 101 analysis. *Bancorp Servs. L.L.C. v. Sun Life Assur. Co.*, 687 F.3d 1266, 1273 (Fed. Cir. 2012) ("[W]e perceive no flaw in the notion that claim construction is not an inviolable prerequisite to a validity determination under § 101.").

**B.      The Law Of 35 U.S.C. § 101.**

Section 101 of the Patent Act sets forth four categories of patentable subject matter: "any new and useful process, machine, manufacture, or composition of matter." 35 U.S.C. § 101. Also, the law recognizes three exceptions to patent eligibility: "laws of nature, physical phenomena, and abstract ideas." *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980) (emphasis added). Abstract ideas are ineligible for patent protection because a monopoly over these ideas would preempt their use in all fields. *See Bilski*, 561 U.S. at 611–12. In other words, "abstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work." *Id.* at 653 (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)).

Determining whether a patent claim is impermissibly directed to an abstract idea involves two steps. First, the court determines "whether the claims at issue are directed to a patent-ineligible concept." *Alice*, 134 S. Ct. at 2355. Second, if the claim contains an abstract idea, the court evaluates whether there is "an 'inventive concept'—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* (internal quotations and citations omitted).

5

Transformation into a patent-eligible application requires "more than simply stating the abstract idea while adding the words 'apply it.'" *Id*. at 2357 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1294 (2012)). Indeed, if a claim could be performed in the human mind, or by a human using pen and paper, it is not patent-eligible. *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011). Also, a claim is not meaningfully limited if it includes only token or insignificant pre- or post-solution activity—such as identifying a relevant audience, category of use, field of use, or technological environment. *Mayo*, 132 S. Ct. at 1297–98, 1300–01; *Bilski*, 561 U.S. at 610; *Diamond v. Diehr*, 450 U.S. 175, 191–92 & n.14 (1981); *Parker v. Flook*, 437 U.S. 584, 595 n.18 (1978). Finally, "simply appending conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, and abstract ideas cannot make those laws, phenomena, and ideas patentable." *Mayo*, 132 S. Ct. at 1300; *see also Fort Props., Inc. v. Am. Master Lease LLC*, 671 F.3d 1317, 1323 (Fed. Cir. 2012) ("Such a broad and general limitation does not impose meaningful limits on the claim's scope.").

## C. The Patent-in-Suit Is Invalid Under 35 U.S.C. § 101.

GLI's claims regarding the '285 Patent should be dismissed. The claims of the asserted patent are invalid under 35 U.S.C. § 101 because they fail both steps of the *Alice* test. Each of the claims is directed to the abstract idea of obtaining the route to a destination. Abstract ideas are not eligible for patenting. None of the claims contains an "'inventive concept' . . . sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *See Alice*, 134 S. Ct. at 2355 (emphasis added). Because GLI has failed to state a claim upon which relief may be granted, Health Mart respectfully requests that the Court grant its motion and dismiss GLI's '285 Patent claims with prejudice. FED. R. CIV. P. 12(b)(6).

### 1. The Independent Claims Of The '285 Patent Are Patent-Ineligible.

In determining patent eligibility under § 101, the Court must first determine whether the claims are directed to an abstract idea. *See Alice*, 134 S. Ct. at 2355. Under any plausible reading, the claims of the patent are directed to an unpatentable, abstract idea because they claim nothing

more than the "longstanding," "routine," and "conventional" concept of obtaining the route to a destination. *See Alice*, 134 S. Ct. at 2356–59; *see also Bilski*, 561 U.S. at 611.

(a)     <em>**Alice** **Step 1: The Independent Claims Are Directed To The Abstract Idea Of Obtaining The Route To A Destination.**</em>

Claim 13 of the '285 Patent, the only claim specifically identified in the complaint, is representative of the independent claims.[1] *See, e.g.*, *Dropbox, Inc. v. Synchronoss Technologies, Inc.*, 371 F.Supp.3d 668, 684-86 (N.D. Cal. 2019) (invalidating 48 claims after analyzing only a few "representative claims" where the other claims were "substantially similar to and require performance of the same idea."); *see also Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc.*, 2:16-cv-152-JRG-RSP, 2017 WL 1065938, at *8–9 (E.D. Tex. Mar. 8, 2017) (invalidating 974 claims after analyzing only a few "representative claims" where the other claims were "substantially similar" and "linked to the same abstract idea."). In assessing whether this claim is directed to an abstract idea, the Court begins by analyzing the "focus" of the claim, i.e., its "character as a whole," in order to determine whether the claim is directed to an abstract idea. *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018). For example, the Federal Circuit has explained that this Court should examine the patent's "'claimed advance' to determine whether the claims are directed to an abstract idea." *Finjan, Inc. v. Blue Coat System, Inc.*, 879 F.3d 1299, 1303 (Fed. Cir. 2018). "In cases involving software innovations, this inquiry often turns on whether the claims focus on 'the specific asserted improvement in computer capabilities . . . or, instead, on a process that qualifies as an "abstract idea" for which computers are invoked merely as a tool.'" *Id.* (quoting *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335–36 (Fed. Cir. 2016)); *see BSG Tech*, 899 F.3d at 1285–86. The claimed advance of Claim 13 of the '285 Patent is inputting the address information of a location and obtaining the route to that location. The claim

---

[1] Where claims are "substantially similar and linked to the same abstract idea," courts may look to representative claims in a § 101 analysis. *Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014).

quickly reduces down to the bare idea of obtaining the route to a destination. That is an abstract idea ineligible for patenting.

Claim 13 is not directed to any specific means or method for improving technology—it is directed to the abstract idea of obtaining the route to a destination. The patent recognizes that entering and storing addresses in GPS devices was something that humans performed manually, but that it was a difficult and time-consuming task:

> Devices, systems and methods for remotely entering, storing and sharing location addresses for a positional information device, e.g., a global positioning system (GPS) device, are provided. The present disclosure **allows a user to easily and safely enter an address into a GPS device** by giving that address to a remote communications link and to have that link automatically program the user's GPS device for usage. The device, system and method of the present disclosure further allows the user to use this stored address(es) on multiple GPS devices without having to **manually** enter the address(es).

*Id.*, 3:58–67 (emphasis added). The patent identifies some problems when using prior art GPS devices to input, store, and use address information: (1) "different devices recognize addresses differently" (*Id.*, 1:45–47); (2) "many users have multiple vehicles that go to the same address and require route guidance by the GPS device" (*Id.*, 1:64–66); and (3) "many times a user needs to route to an address or destination while the user is driving" (*Id.*, 2:4–6). Thus, as the applicant explained, the goal of the purported invention was "to allow a user to be able to easily, quickly and safely program their GPS device(s) with address/destination information." *Id.*, 2:28–30. *See, e.g.*, *Epic IP LLC v. Backblaze, Inc.*, 351 F. Supp. 3d 733, 740 (D. Del. 2018) ("The problem, however, is that the idea of a chat session separate from the original website is not an invention; it is a concept. The asserted claims . . . recite the concept, but not the way to implement it.").

Requesting and receiving location information is an abstract idea, and adding vaguely defined "modules" to determine and transmit routing information between locations does not make the underlying abstract idea any more concrete. Indeed, courts have routinely found that similar claims are directed to abstract ideas. *See, e.g.*, *Wireless Media Innovations, LLC v. Maher Terminals, LLC*, 100 F.Supp.3d 405, 408–09, 413 (D.N.J. 2015); *Concaten, Inc. v. Ameritrak Fleet Solutions, LLC*, 131 F.Supp.3d 1166, 1172 (D. Colo. 2015). For example, in *Concaten*, the claims

at issue were directed toward a method of communicating the location of snow maintenance vehicles to a server over a wireless network, processing the information to provide both a map displaying such location and an instruction for the vehicle operator, and sending the map and instruction over the wireless network back to the vehicles. *See Concaten*, 131 F.Supp.3d at 1170. The court found that these claims were an abstract idea "drawn to the concept of receiving, processing, and transmitting data." *Id.* at 1174. Likewise, in *Wireless Media*, the claims were directed to systems and methods for monitoring and recording container location and load status at a container-receiving facility. *See Wireless Media*, 100 F.Supp.3d at 408–09. The court found that the claims were "directed to the same abstract idea: monitoring locations, movement, and load status of shipping containers within a container receiving yard, and storing, reporting and communicating this information in various forms through generic computer functions." *Id.* at 413. The claims involved in *Concaten* and *Wireless Media* were related to providing location information within specific environments, but courts still found the claims invalid. Similarly, Claim 13 is abstract because it simply takes the concept of obtaining the route to a destination and attempts to implement it through existing computer and wireless technologies. *See also Callwave Communs., LLC v. AT&T Mobility, LLC*, 207 F. Supp. 3d 405, 412 (D. Del. 2016) ("Requesting and receiving location information is an abstract idea, and adding a vaguely defined intermediary that selectively forwards requests and returns responses does not make the underlying abstract idea any more concrete.").

The functional nature of Claim 13's limitations further supports its abstractness. In determining whether a particular claim is directed to an abstract idea, courts have focused on whether the claim is purely functional in nature rather than containing the specificity necessary to recite how the claimed function is achieved. For example, in *SAP America*, the court asked whether the claim had "the specificity required to transform [it] from one claiming only a result to one claiming a way of achieving it." 898 F.3d at 1167. To answer that question, the Federal Circuit has directed courts to "look to whether the claims focus on a specific means or method, or are instead directed to a result or effect that itself is the abstract idea and merely invokes generic processes

and machinery." *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017); *McRO, Inc. v. Bandai Namco Games Am., Inc.,* 837 F.3d 1299, 1314 (Fed. Cir. 2016) ("We therefore look to whether the claims in these patents focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoked generic processes and machinery."). Thus, the question in such cases is "whether the claims are directed to 'a specific means or method' for improving technology or whether they are simply directed to an abstract end-result." *RecogniCorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322, 1326 (Fed. Cir. 2017).

Claim 13 is directed to an abstract end-result. It lacks any of the specificity that the Federal Circuit has held is sufficient to confer patent eligibility. *Cf. Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999 (Fed. Cir. 2018) (holding eligible claims with the required specificity, but ineligible those without it); *Core Wireless Licensing S.A.R.L. v. LG Elec., Inc.,* 880 F.3d 1356, 1361–63 (Fed. Cir. 2018) (holding claims eligible where they were "directed to a **specific** improvement in the capabilities of computing devices") (emphasis added); *see also RecogniCorp*, 855 F.3d at 1326 (claims were ineligible because they were not directed to "a **specific** means or method for improving technology") (emphasis added). Claim 13 does not require a new or unconventional machine or process for obtaining the route to a destination—it requires only that well-known components in a generic mobile device and a generic server perform their conventional functions. As just a few examples, the "locational information module 122 is provided for determining a location of the device 100 and/or user" ('285 Pat., 5:5–6), the "display module 104 [is provided] for displaying a location of a user, a map, coordinates, waypoints, frequently accessed addresses, etc." (*Id.*, 5:34–36), and the "communication module 112 will enable the device 100 to transmit or transfer information" (*Id.*, 6:40–41). These "modules" are defined by their result rather than any specific description of how they are to operate. "Inquiry therefore must turn to any requirements for *how* the desired result is achieved." *Elec. Power Grp., LLC v. Alstom S.A.,* 830 F.3d 1350, 1355 (Fed. Cir. 2016). But Claim 13 does not describe how the desired result—obtaining the route to a destination—is achieved. It merely recites broad

computer functions such as receiving a request for an address, determining location information of the GPS device, receiving the address of the destination, and displaying the route. It does not claim how to implement any of these broad functions. The mechanism to implement the idea is impermissibly unbounded in scope.

The function-dependent nature of the claimed components and "modules" in the '285 Patent is very similar to that in the claims held ineligible by the Federal Circuit in *Capital One*. *Intellectual Ventures I LLC v. Capital One Financial Corporation*, 850 F.3d 1332 (Fed. Cir. 2017) ("*Capital One*"). In that case, the claims covered an apparatus comprising a processor and multiple components that performed certain functions. *Id.* at 1339. The Federal Circuit found the claimed components did not confer eligibility because the claims did nothing more than recite the functions of those components. *Id.* at 1342 ("Rather, the claims recite both a generic computer element—a processor—and a series of generic computer "components" that merely restate their individual functions—i.e., organizing, mapping, identifying, defining, detecting, and modifying. That is to say, they merely describe the functions of the abstract idea itself, without particularity."). The same is true here. Claim 13 of the '285 Patent includes a generic "server," "locational information module," "communication module," "processing module," "display module," and "communications network," but the claims describe these "modules" only by restating what they are configured to do, without particularity. *See, e.g.*, '285 Pat., Cl. 3 ("a locational information module **for determining location information of the positional information device**") (emphasis added). The elements of Claim 13 are thus just as abstract as the components recited in the claims of *Capital One*. *See Capital One*, 850 F.3d at 1342. The claims do not contain the specificity that may change claims from function-dependent (ineligible) to computer-improving (eligible).

Claim 13 thus differs from the claims that the Federal Circuit has held to be eligible because they claimed specific means for improving specific computer technology or solving specific computer problems. For example, the Federal Circuit has addressed the eligibility of claims directed to improving computer security in *Ancora Technologies, Inc. v. HTC America, Inc.*, 908 F.3d 1343 (Fed. Cir. 2018). In that case, the Federal Circuit held the claims eligible and stated,

"Improving security—here, against a computer's unauthorized use of a program—can be a **non-abstract** computer-functionality improvement . . . done by a **specific technique** that departs from earlier approaches to solve a **specific computer problem**." *Id.* at 1348 (emphasis added). The court was persuaded because "[t]he claimed method here specifically identifies how that functionality improvement is effectuated in an assertedly unexpected way." *Id.* The same is not true of Claim 13 of the '285 Patent. It does not require a specific and unconventional technique, and it does not identify any specific improvement to computer functionality, much less an unexpected way of effectuating such an improvement.

That Claim 13 is limited to a computer and wireless environment, such as a GPS device, does not alter this analysis. "Most obviously, limiting the claims to [a] particular technological environment . . . is, without more, insufficient to transform them into patent-eligible applications of the abstract idea at their core." *Elec. Power Grp.*, 830 F.3d at 1354. As the Supreme Court explained in *Alice*, *Parker* stands for the proposition that the prohibition on patenting abstract ideas cannot be circumvented by attempting to limit the use of the idea to a particular technological environment. *Alice*, 134 S. Ct. at 2358; *Parker*, 437 U.S. 584; *see also buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) (claims' "narrowing to cover only online transactions was an attempt to limit the use of the abstract guarantee idea to a particular technological environment, which has long been held insufficient to save a claim in this context") (internal quotations and citations omitted). Claim 13 is directed to an abstract idea even if its limitations require practicing that idea on a GPS device.

Further, the fact that Claim 13 of the '285 Patent is a system claim does not affect the patent eligibility analysis under § 101. The Supreme Court has made clear that reciting a handful of generic computer components configured to implement the same idea does not convert an ineligible abstract idea into eligible subject matter. *See Alice*, 134 S. Ct. at 2359. Claim 13 includes "a server," "a positional information device," "a locational information module," "a communication module," "a processing module," "a display module," and "a communications network," but again, these components and modules are functional computer components for

practicing the abstract idea and do not confer eligibility. *See Capital One*, 850 F.3d at 1342 (holding claims ineligible despite presence of processor and multiple components adapted to perform certain functions); *Two-Way Media*, 874 F.3d at 1337–38 (same).

The other independent claim of the '285 Patent, Claim 1, which is not materially different from Claim 13, fares no better under this analysis: it is directed to the same abstract idea. *See Voip-Pal.Com, Inc. v. Apple Inc.*, 411 F.Supp.3d 926, at 944 (N.D. Cal. 2019). The claimed advance of the independent claims is the abstract concept of "to allow a user to be able to easily, quickly and safely program their GPS device(s) with address/destination information." '285 Pat., 2:28–30. This concept is an abstract idea, not an invention, and accordingly, the independent claims fail the first step of the *Alice* analysis.

> **(b)**   ***Alice* Step 2: The Independent Claims Do Not Contain An Inventive Concept Sufficient To Confer Patent Eligibility.**

The independent claims of the '285 Patent are implemented on generic computer technology and therefore do not contain an inventive concept sufficient to confer eligibility. There is simply nothing "inventive" about using well-known components (i.e., server and GPS device) to perform their conventional functions (i.e., receiving address information for a destination and determining the route to that destination). As explained above, the abstract functional descriptions in the independent claims of the '285 Patent are devoid of any technical explanation as to how to implement the purported invention in an inventive way. *See In re TLI Commc'ns LLC Patent Litigation*, 823 F.3d 607, 615 (Fed. Cir. 2016) (claims failed *Alice*'s step 2 where specification limited its discussion of "additional functionality" of conventional components "to abstract functional descriptions devoid of technical explanation as to how to implement the invention"). Similar to the invalidated claims in *Intellectual Ventures I*, nothing in Claims 1 and 13 "contain[] an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1316 (Fed. Cir. 2016) (citing omitted).

1   Courts have repeatedly held that the presence of generic hardware and software like the

2   kind recited in the independent claims of the '285 Patent does not make an otherwise abstract idea

3   patent-eligible. *See, e.g.*, *buySAFE*, 765 F.3d at 1355 ("That a computer receives and sends the

4   information over a network—with no further specification—is not even arguably inventive.");

5   *Content Extraction*, 776 F.3d at 1348 ("At most, [the] claims attempt to limit the abstract idea of

6   recognizing and storing information from hard copy documents using a scanner and a computer to

7   a particular technological environment. Such a limitation has been held insufficient to save a claim

8   in this context."); *Bancorp*, 687 F.3d at 1276–77.

9   Each of the steps recited in Claim 13 of the '285 Patent is described only at a high level of

10   generality as "receiv[ing] a request for an address," "determining location information of the

11   positional information device," "receiving the determined address," "determin[ing] route guidance

12   based on the location of the positional information device and the determined address," "displaying

13   the route guidance," "coupling the positional information device to the server," "receiv[ing] a time

14   and date associated with the requested . . . location," "transmit[ting] the associated time and date

15   with the determined address to the positional information device," and "display[ing] the

16   determined address at the associated time and date." To accomplish these high level functions, the

17   patent recites the need for only off-the-shelf, conventional computer technologies. For example,

18   "determining location information" could be done by "employing conventional locational

19   information processing technology such as Global Positioning Satellite (GPS) Technology, Loran

20   Technology, or any other available locational technology " ('285 Pat., 5:5–13); "determin[ing]

21   route guidance" could be done "using standard GPS computer processing power and systems" *Id.*,

22   10:45–49); and "displaying the route guidance" can be done using "any [existing] form in the art,

23   including Liquid Crystal Displays (LCD), Light emitting diode displays (LED), Cathode Ray Tube

24   Displays (CRT) or any other type of display currently existing or existing in the future. (*Id.*, 5:36–

25   40). Claim 13 simply recites "a server," "a positional information device," "a locational

26   information module," "a communication module," "a processing module," "a display module,"

27   and "a communications network," to perform these same high-level functions.

28

The applicant's own characterizations demonstrate that the claimed components do not "improve the functioning of the computer itself," *Alice*, 134 S. Ct. at 2359, for example by disclosing an "improved, particularized method of digital data compression," *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1259 (Fed. Cir. 2014), or improving "the way a computer stores and retrieves data in memory," *Enfish*, 822 F.3d at 1339. For example, in *Enfish*, the Federal Circuit distinguished the claims from others that "simply add[ed] conventional computer components to well-known business practices," *Id.* at 1338, holding instead that "they [we]re directed to a specific improvement to the way computers operate," *Id.* at 1336. In particular, the unconventional structure of the database resulted in "increased flexibility, faster search times, and smaller memory requirements." *Id.* at 1337. Unlike *Enfish*, nothing in Claims 1 and 13 of the '285 Patent shows any unconventional methodology that would amount to a "specific improvement to the way computers operate." Therefore, the focus of the '285 Patent is not "on [a] specific asserted improvement in computer capabilities" but instead "on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Id.* at 1336. "Nothing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer . . . technology." *Elec. Power Grp.*, 830 F.3d at 1355. Thus, there is no limitation in the independent claims that could be considered an inventive concept under step two of the *Alice* test.

Even if the ordered combination of claimed limitations were novel or arguably unconventional, the question remains whether these limitations actually improve computer functionality or merely the abstract idea itself. Thus, "[a]t *Alice* step two, it is irrelevant whether [obtaining the route to a destination] may have been non-routine or unconventional as a factual matter." *BSG Tech*, 899 F.3d at 1290–91 ("As a matter of law, narrowing or reformulating an abstract idea does not add 'significantly more' to it."); *see also Berkheimer v. HP Inc.*, 881 F.3d 1360, 1370 (Fed. Cir. 2018) (holding claims lacked an inventive concept because they "amount to no more than performing the abstract idea of parsing and comparing data with conventional computer components"); *Affinity Labs of Texas, LLC v. DirecTV, et al.*, 838 F.3d 1253, 1262 (Fed. Cir. 2016) (holding a claim lacked an inventive concept because it "simply recites the use of

generic features . . . as well as routine functions . . . to implement the underlying idea"). The independent claims of the '285 Patent are not patent eligible.

### 2.    The dependent claims of the '285 Patent are not patent eligible.

The dependent claims of the '285 Patent recite additional limitations regarding the abstract idea, but they do not include the specificity necessary to claim patent-eligible subject matter. They also do not include anything other than generic components and processes such that they fail to contain an inventive concept. Accordingly, the dependent claims suffer from the same flaws as the independent claims, despite their additional limitations, and should therefore be treated the same as the independent claims.

The dependent claims recite additional environmental limitations: "communications network is a telematics network" ('285 Pat., Cls. 2, 14); "first identifier is an Internet cookie" (*Id.*, Cl. 3); and "second identifier of the positional information device is a mobile phone number or an IP address" (*Id.*, Cl. 4). Some dependent claims recite insignificant pre- or post-solution activity, such as determining the address by information associated to the address. *See id.*, Cl. 7; *see also id.*, Cls. 5, 6, 8-12, 15-18. Each of these claims, like Claims 1 and 13 of the '285 Patent, is not meaningfully limited because these activities are not "essential to the invention." *Clear with Computers, LLC v. Dick's Sporting Goods, Inc.*, 21 F. Supp. 3d 758, 763 (E.D. Tex. 2014) (noting limitations must "do more than recite pre- or post-solution activity, they [must be] central to the solution itself" to be meaningful) (quotations omitted); *see also Wolf v. Capstone Photography, Inc.*, 2:13-cv-09573, 2014 WL 7639820, at *12 (C.D. Cal. 2014) (invalidating patents and dependent claims which "advise[d] using well-known techniques" and rejecting plaintiff's contention that the dependent claims narrow the invention to a patentable application, or that they "provid[e] something 'significantly more' than the claimed abstract idea itself." Because all of these claims are directed to the abstract idea of obtaining the route to a destination and none includes any inventive concept, the claims similarly fail both steps of the *Alice* test.

The dependent claims also do not contain any inventive concept amounting to "significantly more" than the abstract idea. They do not inject any unconventional computer

components or techniques. The claims simply apply the abstract concept of obtaining the route to a destination, and the Federal Circuit has been clear that the abstract idea itself cannot confer an inventive concept. *See BSG Tech*, 899 F.3d at 1290 ("It has been clear since *Alice* that a claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept.").

Accordingly, the dependent claims, like the independent claims, fail both steps of the *Alice* test and should be found ineligible.

> **3.    There are no claim construction or factual disputes preventing the Court from ruling on this issue at the Rule 12 stage.**

The issue of the patent eligibility is ready for the Court's consideration because there are no factual or claim construction issues. This case is markedly different from *Berkheimer* and the line of cases where factual issues have been found to exist in *Alice* Step 2. In *Berkheimer*, the Federal Circuit noted that the specification explicitly "describe[d] an inventive feature that store[d] parsed data in a purportedly unconventional manner." 881 F.3d at 1369. The court added that "[t]he improvements in the specification, to the extent they are captured in the claims, create a factual dispute regarding whether the invention describes well-understood, routine, and conventional activities . . . so we must analyze the asserted claims and determine whether they capture these improvements." *Id.* After finding that some claims "contain limitations directed to the arguably unconventional inventive concept described in the specification," the court held that there was a question of fact as to whether those claims perform "well-understood, routine, and conventional activities." *Id.* at 1370.

It should be noted, however, that "[t]he *Berkheimer* [] cases do not stand for the proposition that a plaintiff can avoid dismissal simply by reciting in the complaint that the invention at issue is novel and that the inventive concept resides in the abstract idea itself." *First-Class Monitoring, LLC v. Ups of Am., Inc.*, 389 F. Supp. 3d 456, 471 (E.D. Tex. 2019) (emphasis added); *see also Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1151 (Fed. Cir. 2016) (stating "[A] claim for a new abstract idea is still an abstract idea") (emphasis in original); *see also Cisco Systems,*

*Inc. v. Uniloc 2017 LLC*, 813 Fed. Appx. 495, 498-499 (Fed. Cir. 2020) (holding "purported factual allegations" regarding eligibility in complaint "are not factual allegations; they are sweeping conclusory statements . . . that [] did not preclude dismissal."). Furthermore, "[a]ny allegation about inventiveness, wholly divorced from the claims or the specification, does not defeat a motion to dismiss; only plausible and specific factual allegations that aspects of the claims are inventive are sufficient." *Dropbox, Inc. v. Synchronoss Techs., Inc.*, 815 F. App'x 529, 538 (Fed. Cir. 2020) (internal quotations omitted).

Here, GLI's bare and implausible allegations of inventiveness in the Complaint cannot defeat this motion; otherwise, Rule 12(b)(6) would be rendered toothless against plaintiffs who plead "magic words." *See* Compl., ¶¶ 14–21. Patentee plaintiffs should not have the power to unilaterally declare that their claims are inventive. *See Appistry, Inc. v. Amazon.com, Inc.*, 195 F. Supp. 3d 1176, 1183, n.6 (W.D. Wash., 2016) aff'd sub nom. *Appistry, LLC v. Amazon.com, Inc.*, 676 F. App'x 1008 (Fed. Cir. 2017) ("Plaintiff's position is absurd. Requiring the Court to accept such facts or legal conclusions (even in the form of an early expert declaration) would permit any plaintiff to circumvent the § 101 inquiry on an early motion to dismiss or motion for judgment on the pleadings simply by including a few lines attesting to the novelty of the invention."). Rather, GLI's decision to include such assertions of inventiveness in the Complaint demonstrate that it is keenly aware of the claims' vulnerability.

The Court's ineligibility analysis should disregard GLI's boilerplate legal conclusions about the inventive aspects of the '285 Patent. *See Simio, LLC v. FlexSim Software Products, Inc.*, 983 F.3d 1353, 1366 (Fed. Cir. 2020) ("We disregard conclusory statements when evaluating a complaint under Rule 12(b)(6)."). For example, GLI alleges that "[t]he '285 Patent invention includes include software and hardware that do not operate in a conventional manner." Compl. at ¶ 19. This is not a factual allegation—it is a legal conclusion in which GLI attempts to unilaterally declare its patent is directed to eligible subject matter, and should be ignored by the Court. *See Simio*, 983 F.3d at 1366 ("A statement that a feature 'improves the functioning and operations of the computer' is, by itself, conclusory.").

Once GLI's conclusory legal allegations about the inventiveness of its asserted patent are properly disregarded, there is nothing left to preclude a determination of ineligibility on the pleadings. Accordingly, Health Mart's motion is ripe, and it should be granted.

## IV.    CONCLUSION

For the foregoing reasons, Health Mart respectfully requests that the Court dismiss GLI's claims based on the '285 Patent for failure to state a claim upon which relief can be granted. Because leave to amend would be futile, Health Mart requests dismissal with prejudice.

Dated: August 27, 2021                    Respectfully submitted,

**FISH & RICHARDSON P.C.**

By: */s/ Betty Chen*
Betty Chen
California SBN 290588
bchen@fr.com
500 Arguello St. Suite 400
Redwood City, CA 94063
Telephone: (650) 839-5070
Facsimile: (858) 678-5099

Thad Kodish (*pro hac vice to be filed*)
Georgia Bar No. 427603
tkodish@fr.com
1180 Peachtree Street NE, 21st Floor
Atlanta, GA 30309
Telephone: (404) 892-5005

Ricardo J. Bonilla (*pro hac vice to be filed*)
Texas Bar No. 24082704
Sarika N. Patel (*pro hac vice to be filed*)
Texas Bar No. 24073520
1717 Main Street, Suite 5000
Dallas, TX 75201
Telephone: (214) 747-5070
Facsimile: (214) 747-2091
rbonilla@fr.com
patel@fr.com

**COUNSEL FOR DEFENDANT
HEALTH MART SYSTEMS, INC.**